# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00765-CR

**Johnny Alison Grant, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-04-459, HONORABLE RONALD G. CARR, JUDGE PRESIDING

## O P I N I O N

A jury found appellant Johnny Alison Grant guilty of aggravated assault by causing serious bodily injury. *See* Tex. Penal Code Ann. § 22.02(a)(1) (West Supp. 2007). After finding that Grant had a previous felony conviction, the trial court assessed a prison term of five years. *See id.* § 12.42(b) (West Supp. 2007). In two points of error, Grant contends that the trial court erred in (1) admitting evidence of a remote felony conviction for the purpose of impeaching his testimony and (2) imposing a harsher sentence after having already pronounced a valid sentence of three years' imprisonment. We overrule both points of error and affirm the judgment of the trial court.

## BACKGROUND

On April 24, 2004, San Marcos police were dispatched to the residence shared by Grant and his former girlfriend, Lerlean Williams, in response to a 911 call indicating that a woman needed emergency medical attention. When officers arrived at the scene, Ms. Williams was found

in her bedroom, covered in blood and repeatedly screaming, "He just kept hitting me." Ms. Williams was taken to the emergency room for treatment. Her jaw had been broken and she had an eight-centimeter laceration on her chin.

In the hallway outside the room where she was found, the police discovered a blood-stained shirt and several sharp objects—two pairs of nail clippers, a larger pair of cuticle scissors, and a screwdriver for repairing eyeglasses—lying in a pool of blood. Ms. Williams later testified that Grant hit her in the face and grabbed her around her neck, that at some point she blacked out, and that when she awoke, a pair of cuticle scissors fell from her chin, although she could not remember being stabbed.

Grant was not present when the police arrived, but he was subsequently arrested after Ms. Williams identified him as her attacker. While in custody, Grant admitted that he had hit Ms. Williams with his fist, but he claimed that he never stabbed her and that he had acted in self-defense. He was charged with one count of aggravated assault with a deadly weapon and one count of aggravated assault by causing serious bodily injury. *See* Tex. Penal Code Ann. § 22.02(a)(1), (2) (West Supp. 2007).

At trial, Grant testified in his own defense, stating that on the day of the incident with Ms. Williams, she spent "four or five hours" berating him and attempting to provoke a response from him. He claimed that after Ms. Williams made hurtful remarks about his relationship with his children and repeatedly poked him in the chest with her finger, he "just lost it" and "went over the line." He also stated that while they were arguing, Ms. Williams blocked the doorway to prevent him from getting by and that he felt threatened because she was larger than him. Grant testified that

he hit Ms. Williams once, and then the two of them tumbled to the floor together and he hit her "a couple more times in the same spot" until he saw that she was bleeding. He stated that he got a shirt from his bedroom for her to hold against her chin to stop the bleeding, and then he helped her to her feet and left the house.

During direct examination, Grant testified that he had never "threatened to kill or hurt anybody, ever," that he had "never hit a woman before," and that he had "never hit a man like that." He further stated, "[T]hat spot on her chin, that's me. And, you know, I'm glad she's recovered from that, but I'll have to live knowing that I done that to somebody, because I've never done that to anybody."

Outside the hearing of the jury, the State asked the trial court to allow Grant's testimony to be impeached with a prior felony conviction from 1976 when Grant stabbed three people in a bar in New York. The State argued that Grant had "opened the door" by making statements to the effect that he was a nonviolent person and had created a "false impression with the jury as to his propensity for violence." Grant objected on the basis that rule 609(b) of the Texas Rules of Evidence barred the admission of the conviction, arguing that the probative value of the conviction would not outweigh its prejudicial effect.[1]

---

[1] Rule 609 states:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to a party.

(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period

3

The trial court overruled Grant's objection, and the State proceeded to question Grant about the incident on cross-examination.[2]

The jury found Grant guilty on the count of aggravated assault by causing serious bodily injury, a second-degree felony, and not guilty on the count of aggravated assault with a deadly weapon. When the enhancement portion of the indictment was presented, Grant pleaded "not true" to the allegation that he had previously been convicted of a felony, thereby placing on the State the burden of proving the enhancement allegation. During the punishment hearing, the trial court admitted evidence of Grant's prior felony assault conviction, and Grant also testified that he had four prior convictions for driving while intoxicated.[3] The court then assessed a sentence of three years' imprisonment, after which the following exchange took place:

> of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Tex. R. Evid. 609.

[2] The previous conviction was raised during cross-examination after Grant, who continued to maintain that he had never threatened to kill or hurt anyone and had never hit a woman or a man like that before, testified, "I don't get in fights all the time. Like I said, I haven't been in fights since I can't remember." When the prosecutor asked what had happened "in that bar in Homer, New York, back in 1976," Grant stated that three men attacked him "for being from Texas" and that he stabbed them in self-defense. He admitted that he almost killed one of the men, but argued that he was convicted because it was his understanding that "New York law doesn't recognize the act of self-defense using a weapon."

[3] It is not clear from the record whether one of the DWI convictions was, in fact, a felony conviction, as the State apparently alleged during the sentencing hearing. Regardless, the 1976 felony assault conviction was admitted for the purpose of enhancement, and Grant does not raise a point of error on appeal with regard to its admission during the sentencing hearing.

4

[Prosecutor]:   Excuse me?  What was the punishment you assessed?

The Court:   Three years' confinement.

[Prosecutor]:   Are you finding the enhancement not true?

The Court:   Let me reconsider that, I forgot about the enhancement.

[Prosecutor]:   You've got a minimum of five if the enhancement is true.

The Court:   I erred.  The Court withdraws that sentence and finds the enhancement true and assesses five years' confinement and no fine.

In his first point of error, Grant contends that he was improperly impeached with evidence of a remote felony conviction from 1976 in violation of Texas Rule of Evidence 609(b). In his second point of error, Grant argues that because the trial court imposed a valid sentence of three years' confinement, the "later imposition of a new higher sentence was barred by double jeopardy protections."

**DISCUSSION**

*Remote felony conviction*

Over Grant's rule 609(b) objection, the trial court admitted evidence of his 1976 felony assault conviction for the purpose of impeaching his testimony that he was not a violent person and had never threatened to hurt or kill anyone.[4]

---

[4]  The State contends that Grant failed to make a proper contemporaneous objection to preserve his rule 609(b) complaint for review.  We disagree.  The record reflects that outside the presence of the jury, the prosecutor asked the court to allow him to cross-examine Grant regarding "prior conduct that actually resulted in a conviction, although it was in 1976, that involved his having stabbed three people."  In response, counsel for Grant stated, "Your honor, this happened way back in 1976.  I think it is not allowed, under 609(b) to allow this testimony.  This evidence, to come

The trial court has a wide measure of discretion in deciding whether to admit into evidence a previous conviction; therefore, we review such a ruling for an abuse of discretion. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). The trial court abuses its discretion if its decision to admit a prior conviction lies outside the zone of reasonable disagreement. *Id.* Even if the trial court erred in admitting evidence of the previous conviction, the error is reversible only if it affected the defendant's substantial rights. *See* Tex. R. App. P. 44.2(b).

Rule 609(b) prohibits the admission for impeachment purposes of all prior convictions more than ten years old, absent a showing that the probative value of the conviction substantially outweighs its prejudicial effect. Tex. R. Evid. 609(b); *see Hankins v. State*, 180 S.W.3d 177, 180 (Tex. App.—Austin 2005, pet. ref'd). "However, an exception to Rule 609 applies when a witness makes statements concerning his past conduct that suggest he has never been arrested, charged, or convicted of any offense." *Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993). Where the witness creates a false impression of law-abiding behavior, he "opens the door" on his otherwise irrelevant past criminal history and opposing counsel may expose the falsehood. *Id.*

---

forward at this point, would be highly prejudicial to the defendant more so than it would be probative to the case." The Court ruled on the objection, stating, "for impeachment purposes . . . the Court would allow the questioning in the testimony."

"When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections." Tex. R. Evid. 103(a)(1). The record shows that Grant's objection was timely and stated the specific ground of objection. Because the trial court ruled on Grant's objection outside the presence of the jury, Grant was not required to object to the admission of the evidence at the time that evidence was offered before the jury during his cross-examination. *See Ethington v. State*, 819 S.W.2d 854, 859 (Tex. Crim. App. 1991). Therefore, Grant's objection to the admissibility of his remote conviction under rule 609(b) was properly preserved for appellate review. *See* Tex. R. App. P. 33.1(a).

6

In response to Grant's contention that the evidence of his 1976 conviction was erroneously admitted in violation of rule 609(b), the State argues that the prosecutor was "arguably relying on Texas Rule of Evidence 608(b) more so than 609(b), since he specifically stated on the record that '. . . quite frankly, it's not so much the conviction that I'm concerned with at this point, although there was a felony conviction resulting from it, it's the conduct.'" Rule 608(b) expressly bars the admission of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in Rule 609." *See* Tex. R. Evid. 608(b). Such specific instances of conduct may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence. *Id.* There are, however, three exceptions to rule 608(b): specific instances of conduct may be admissible (1) to expose bias or interest; (2) to correct any affirmative misrepresentations made on direct examination; or (3) to demonstrate a lack of capacity. *See Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997). The State maintains that Grant "opened the door" for impeachment with evidence of his prior bad acts when he made affirmative misrepresentations about his propensity for violence.

The trial court, in overruling Grant's objection, did not specify whether the State was permitted to impeach Grant with the 1976 incident because (1) the probative value of the prior conviction "substantially outweighed" its prejudicial effect under rule 609(b); (2) Grant created the false impression of law-abiding behavior, which the State could correct under the exception to rule 609(b); or (3) the conduct was admissible to correct Grant's affirmative misrepresentations under the second exception to rule 608(b). It is well settled that if the trial court's decision is correct on any theory of law applicable to the case, it will be sustained, even when the trial judge gives the

7

wrong reason for his decision. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). Therefore, because we conclude that Grant did in fact "open the door" for impeachment with evidence of his prior assault conviction in accordance with the exceptions to both rules of evidence, we hold that the trial court did not err in admitting the evidence.

A defendant does not have the right to testify free from impeachment. *Lopez v. State*, 990 S.W.2d 770, 777 (Tex. App.—Austin 1999, no pet.). He may "open the door" to an otherwise irrelevant criminal history when he creates a "false impression" of law-abiding behavior, allowing the State to expose the falsehood. *Id.*; *see also James v. State*, 102 S.W.3d 162, 181 (Tex. App.—Fort Worth 2003, pet. ref'd). "In order, however, to open the door to the use of prior crimes for the purposes of impeachment, the witness must do more than just imply that he abides by the law, and must in some way convey the impression that he has never committed a crime." *Lopez*, 990 S.W.2d at 777.

Grant correctly points out that the false-impression exception is a narrow one, and any statements that are alleged to have left a false impression must be viewed in context. *See James*, 102 S.W.3d at 181. He argues that because he admitted to having had four DWI convictions during direct examination, he did not imply that he had never been in trouble with the law. Furthermore, he points out that his statement that he had never threatened to kill or hurt anybody was made in response to "uncorroborated allegations by the complainant concerning threats against specific persons."

In analyzing the applicability of the exception, reviewing courts consider the defendant's statement in relation to the question asked, examine how broadly the question asked

8

could be interpreted, and analyze the relationship between the question asked and the major substantive issues in the trial. *See, e.g.*, *Delk*, 855 S.W.2d at 704-05; *Prescott v. State*, 744 S.W.2d 128, 131-32 (Tex. Crim. App. 1988); *Lewis v. State*, 933 S.W.2d 172, 178-79 (Tex. App.—Corpus Christi 1996, pet. ref'd). We agree with Grant that his statement that he had never threatened to kill or hurt anyone was made in response to the specific question of whether he had threatened his former landlord, Mr. Ramsay, which had no relation to the case at bar and, taken in its proper context, was not a disavowal of having any criminal history.[5]

But we find no attempt by Grant to address other statements he made, namely, "I've never hit a man like that," and, in reference to the injuries inflicted upon Ms. Williams, ". . . I'll have to live knowing that I done that to somebody, because I've never done that to anybody." Those statements were made in support of Grant's theory of self-defense, under which he claimed that

---

[5] The relevant exchange during direct examination took place as follows:

Q.      After y'all left the VA hospital, did you begin to live together?

A.      Well, it was - - we came - - we became pretty good friends. . . . We got the Blanco newspaper and looked in the want ads and there was an ad in there for an elderly couple seeking husband and wife team to help them do some stuff.

      . . .

Q.      Now, this elderly couple, were they the Ramsays?

A.      The Ramsays, they sure were.

Q.      Ms. Williams testified on the stand that at one time you had threatened Mr. Ramsay; is that correct?

A.      That's not correct. I never threatened to kill or hurt anybody, ever.

Ms. Williams intimidated him by blocking his passage through the hallway and put him in fear of suffering physical harm. He testified that Ms. Williams poked him twice in the chest and that he felt threatened by her because she weighed 300 pounds and was 5'10", while he weighed only 185 pounds. He also repeatedly denied having stabbed Ms. Williams, testifying that he only hit her three times with his fist.

We think that the impression left by Grant's testimony in this case is analogous to that which was described by this Court in *Garcia v. State*, 454 S.W.2d 400 (Tex. App.—Austin 1970, no pet.). In *Garcia*, the appellant complained that he had been impeached with evidence of his involvement in other fights that was admitted in order to correct misrepresentations he had made while testifying that he acted in self-defense. *Id.* at 405-06. He testified during direct examination that he had innocently engaged the victim in conversation, he attempted to back off when the victim showed aggression towards him, he knew that the victim had been in fights before, and, while he did not fear death, he thought he would be "beaten up." *Id.* We held that the impeachment in that case was proper because the appellant's testimony "clearly left the jury with the impression that the inexperienced appellant was confronted with an experienced fighter whom he had just reason to fear and while the deceased was unarmed the appellant acted out of fear to protect himself." *Id.* at 406.

Similarly, the effect of Grant's testimony was to suggest that he had never been in a fight before and had never caused serious injury to anyone. He described Ms. Williams as the aggressor, explained that he tried to resolve the tension peacefully by leaving the house, even after he had been subject to her verbal abuse for several hours, and implied that because of her size, Ms. Williams was capable of inflicting severe physical injury. When his counsel questioned Grant

10

about the incident where Ms. Williams allegedly "attacked" him, eliciting an affirmative response that Ms. Williams's finger-poking to his chest was "hard enough that [Grant] feared harm," the jury could reasonably have been left with an impression that Grant was a nonviolent person who had little or no experience defending himself against threats such as the one posed by Ms. Williams.

More importantly, however, Grant's statement that he had "never done that to anybody" was sufficient to invite impeachment with the prior assault evidence that the State introduced. The statement was offered in response to his attorney's question, "Is there anything else you want to tell the jury?" and, in context, amounted to a specific denial of having ever committed assault, the same offense for which he was being tried.[6] Based on this affirmative statement by Grant broadly disavowing having ever engaged in this manner of violent behavior, the trial court did not abuse its discretion in admitting evidence of Grant's prior assault.

Even if the trial court had erred in admitting evidence of the 1976 assault, however, the record does not establish that Grant suffered harm as a result. *See* Tex. R. App. P. 44.2; Tex. R. Evid. 103(d). In determining whether Grant was harmed by the admission, we consider everything in the record. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We also consider overwhelming evidence of guilt, but that is only one factor in our harm analysis. *Motilla v. State*, 78 S.W.3d 352, 356-58 (Tex. Crim. App. 2002). It is the responsibility of the appellate court to assess harm after reviewing the record, and the burden to demonstrate whether the

---

[6] Given Grant's vehement denial that the cut on Ms. Williams' chin was a stab wound, the statement can further be viewed as a declaration that Grant had never stabbed anyone before, as the prosecutor argued to the trial court: "I think I'm allowed to absolutely hit him over the head with the prior conduct back in 1976, particularly as it involves stabbing people, which is what we're talking about in this case."

appellant was harmed by a trial court error does not rest on either the appellant or the State. *Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001).

The evidence was uncontroverted that Grant hit Ms. Williams with his fist and that she suffered a broken jaw. In addition to Ms. Williams's testimony regarding the assault, Grant himself testified during direct examination that he hit Ms. Williams "[r]ight along the cheek and the jawbone" and that his "knuckles were black and blue" afterward. The emergency room doctor who treated Ms. Williams testified to the extent and seriousness of her injuries. This evidence was sufficient to support the jury's finding that Grant committed aggravated assault resulting in serious bodily harm, the offense for which Grant was convicted. From our review of the entire record, we think that the jury, which found Grant not guilty on the aggravated assault with a deadly weapon charge, was not influenced by the evidence regarding the 1976 stabbing incident.[7] *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (Error should be considered harmless "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.").

---

[7] Moreover, the record provides ample support to conclude that the jury reasonably disbelieved Grant's theory of self-defense. During direct examination, Grant testified that he was estranged from his children and was particularly sensitive about that fact. He stated, "[Ms. Williams] knew how I felt about my children," and just before the argument turned physically violent, Ms. Williams "pointed - - she poked me in the chest, you know, not hard, but hard enough, emphasizing about my boys. 'You'll never see them again.' And I just lost it." He further stated, "It was a good poke trying to get to - - you know, this is what I - - this was her last chance and I felt she knew it. This was her last chance for me to go over that edge." And, when asked if he felt threatened by Ms. Williams, Grant stated, "I felt threatened in the way that if I didn't get out of there, you know, she wasn't going to get off it and something was fixing to happen. I don't like anyone talking about my children." On this evidence, the jury was entitled to reject the theory that Grant was justified in defending himself from Ms. Williams's hurtful remarks and finger-poking, which he admits was "not hard," by repeatedly hitting her with sufficient force to break her jaw.

We conclude that the trial court did not err in admitting evidence of Grant's remote assault conviction and overrule his first point of error.

*Double jeopardy*

In his second issue, Grant argues that once the trial court imposed a valid sentence of three years' imprisonment, double-jeopardy protections barred the court from subsequently imposing a harsher sentence of five years' imprisonment.[8] *See* U.S. Const. amend. V; Tex. Const. art. I, § 14. The State responds that Grant's argument "is just silly," and that in any event, the trial court retained plenary power to modify its sentence. *See State v. Aguilera*, 165 S.W.3d 695, 698 (Tex. Crim. App. 2005).

Where, as here, the trial court modifies a sentence that it has already pronounced, it must have plenary power to act, *see id.*, and the subsequent sentence cannot violate the defendant's right to be free from double jeopardy, *see Harris v. State*, 153 S.W.3d 394, 397 (Tex. Crim. App. 2005).

---

[8] Ordinarily, as a prerequisite to presenting a complaint on appeal, the complaining party must preserve error. *See* Tex. R. App. P. 33.1. Grant concedes that he failed to object when the trial court reassessed his punishment after finding the enhancement paragraph to be true. But, as he correctly points out, a double-jeopardy claim may be raised for the first time on appeal when the undisputed facts show the double-jeopardy violation is clearly apparent on the face of the record and when enforcement of the usual rules of procedural default serves no legitimate state interests. *See Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). This test is met when the charges "are heard in front of the same judge and arise out of the same criminal transaction because the trial court is charged with constructive knowledge of the double jeopardy claim." *Beltran v. State*, 30 S.W.3d 532, 533 (Tex. App.—San Antonio 2000, no pet.). We agree with Grant that the test is satisfied in this case.

A trial court does not have the power to alter or modify a defendant's sentence once the defendant has begun to serve his sentence. *See Williams v. State*, 170 S.W.2d 482, 486 (Tex. Crim. App. 1943); *Powell v. State*, 63 S.W.2d 712, 713 (Tex. Crim. App. 1933). *Aguilera* recently clarified this rule, however, making such modification permissible so long as it is done on the same day as the assessment of the initial sentence and before the court adjourns for the day, and if the resentencing is done in the presence of the defendant, his attorney, and counsel for the state. *See Aguilera*, 165 S.W.3d at 698. The prohibition against double jeopardy, on the other hand, forbids any increase in a defendant's sentence once that sentence has been served or executed. *See Ex parte Lange*, 85 U.S. 163, 174 (1874); *Turner v. State*, 31 S.W.2d 809, 810 (Tex. Crim. App. 1930).

There is no question in this case that the trial court had plenary power to modify Grant's sentence because the *Aguilera* criteria were met; rather, the issue is whether the imposition of a more severe sentence than the one first pronounced violated Grant's rights under the double-jeopardy clauses of the United States and Texas Constitutions. Based on our review of the recent case law addressing this question, we disagree with the State that Grant's argument should be dismissed out of hand and conclude that Grant has in fact presented a legitimate argument warranting our consideration.

Grant primarily bases his complaint on two cases from the Houston courts of appeals, *Dickerson v. State*, 864 S.W.2d 761 (Tex. App.—Houston [1st Dist.] 1993, no pet.) and *Tooke v. State*, 642 S.W.2d 514 (Tex. App.—Houston [14th Dist.] 1982, no pet.). While the continuing relevance of these decisions as persuasive authority has recently been called into question,

14

*see Aguilera*, 165 S.W.3d 695, 701 n.8 (Cochran, J., concurring), we shall review them for the purpose of fully addressing the issue Grant raises on appeal. *See* Tex. R. App. P. 47.1.

In *Dickerson*, the trial court orally pronounced a sentence of two years' imprisonment, the defendant accepted the sentence,[9] and the defendant was removed from his position before the bench to be processed for delivery to the penitentiary. 865 S.W.2d at 763-64. At that time, the prosecutor asked the trial court, "Did you not find the enhancements true?" *Id.* at 764. The judge acknowledged his mistake and summoned the defendant to "come back up here" so that he could "retract" the sentence. *Id.* He then assessed the statutory punishment for an habitual offender, twenty-five years' imprisonment. *Id.* The record reflected that "not even a minute" elapsed between the initial pronouncement of the sentence and the prosecutor's inquiry regarding the enhancement finding. *Id.* at 763.[10]

Citing *Tooke*, which involved essentially the same facts, the *Dickerson* majority held that the attempted resentencing was null and void. *Id.* The majority concluded that the situation did not involve a sentencing error, which the trial court could then correct; instead, the trial court had properly sentenced the defendant in the first instance because there was "no dispute that, without finding at least one of the two enhancement paragraphs to be true, two years was a statutorily allowable punishment." *Id.* at 763. The so-called error in the initial sentencing was "simply

---

[9] A defendant accepts his sentence when he gives no notice of appeal in response to it. *Dickerson v. State*, 864 S.W.2d 761, 763 n.3 (Tex. App.—Houston [1st Dist.] 1993, no pet.).

[10] The facts of the instant case most closely resemble the circumstances in *Dickerson*, except that Grant had not yet been removed from his place before the bench when the prosecutor raised the enhancement issue.

prosecutorial default" because the prosecutor had failed to object at any point "until it was too late for the court to change the sentence." *Id.* at 763-64.

In her dissenting opinion in *Dickerson*, Justice Dunn emphasized that the resentencing was valid because the defendant had not yet begun serving his sentence, and it was clear that the trial court had made some mistake or oversight, subsequently realized its mistake, and then resentenced the defendant in line with its original intentions. *Dickerson*, 864 S.W.2d at 766 (Dunn, J., dissenting). It is the reasoning of Justice Dunn's dissent that appears to have prevailed in the recent decisions of the court of criminal appeals, to which we now turn.

The first of these cases involved resentencing based on a subsequent finding of true to an enhancement allegation that took place in a separate proceeding the following day after the defendant was first sentenced. *See Harris*, 153 S.W.3d 394. In *Harris*, the defendant was found guilty of a third-degree felony. *Id.* at 395. At the first sentencing hearing, the trial court received evidence of Harris's prior convictions but did not specifically find the enhancements to be true on the record. *Id.* at 396. Harris was sentenced to ten years' imprisonment, which was within the statutory range for an "un-enhanced" third-degree felony. *Id.* at 397. The next day, the trial judge recalled Harris, said that he found the enhancements to be true, and reassessed the punishment, sentencing Harris to twenty-five years' imprisonment. *Id.* at 395. Citing *Tooke*, the court of criminal appeals ruled that the second attempt at sentencing violated Harris's rights under the double-jeopardy clause, holding that "[b]ecause the ten-year sentence was a valid and authorized sentence under the Texas Penal Code, the trial court's second pronouncement of a 25-year sentence the following day was an unconstitutional 15-year increase." *Id.* at 397.

16

The court of criminal appeals later clarified its holding in *Harris* by emphasizing that in that case, the resentencing "was done the next day and there can be no dispute that Harris had begun serving his sentence." *Aguilera*, 165 S.W.3d at 697. The *Aguilera* majority further noted in dicta that although article 42.09 of the code of criminal procedure provides that a defendant's sentence begins to run "on the day it is pronounced," the trial court is not barred from resentencing a defendant "on the same day on which he was initially sentenced." *Id.* at 697 n.1.

While *Aguilera* specifically addressed the trial court's plenary power to modify a sentence downward on the same day it was pronounced, the concurring opinion by Justice Cochran makes two significant suggestions: (1) the court's announced rule permits a trial judge to "modify his sentence either up or down if the defendant has not yet begun to serve the original sentence" without offending double-jeopardy protections, and (2) "neither *Dickerson* nor *Tooke* survive the majority's holding." *Id.* at 701 n.8, 702 (Cochran, J., concurring).[11]

In *Ex parte Cruzata*, 220 S.W.3d 518, 521 (Tex. Crim. App. 2007), the court of criminal appeals appears to have resolved the issue of whether the *Aguilera* rule may operate to *increase* a sentence previously pronounced in favor of Justice Cochran's interpretation. The trial court had assessed a sentence of seven years' imprisonment during a proceeding to adjudicate Cruzata's guilt after he violated the conditions of his community supervision. *Id.* at 520. "A few minutes later, the trial court, after being reminded by the State that applicant had 'a very extensive

---

[11] As Grant points out, however, the *Aguilera* majority neither mentions nor overrules these cases, and *Tooke* is cited favorably in *Harris*. *See Harris v. State*, 153 S.W.3d 394, 397 n.10 (Tex. Crim. App. 2005). Without speculating as to the continuing viability of *Dickerson* and *Tooke*, however, we note that neither case was decided on the grounds that the attempted resentencing violated double jeopardy, as Grant argues in this appeal.

17

history . . . of extraneous offenses,' announced that it was 'going to withdraw' its assessment of punishment and 'reset [the hearing] for sentencing at a later date.'" *Id.* Two weeks later, the trial court held another hearing and reassessed a punishment of fifteen years' imprisonment. *Id.* After holding that Cruzata's claim was not cognizable in habeas corpus, the court went on to state,

> Even if we were to find applicant's claim cognizable, he would not prevail on it. In *Powell v. State*, we stated that a trial court may revise, correct, or vacate a sentence before the defendant begins to serve that sentence. In *State v. Aguilera*, on which the State relies, we held that a trial court may modify a sentence if the modification is made on the same day as the assessment of that sentence and before court adjourns for the day. Implicit in that holding was that a defendant begins to serve his sentence at the adjournment of court on the day that the sentence is assessed. Reading *Powell* and *Aguilera* together, it is clear that the trial court's actions in this case were proper.

*Id.* at 520-21 (citations omitted).

Finally, in *State v. Wooldridge*, 237 S.W.3d 714 (Tex. Crim. App. 2007), the court again addressed the double-jeopardy issues raised in *Harris*. Wooldridge was found guilty of aggravated assault, a second-degree felony, and was alleged to be an habitual offender. *Id.* at 715. During sentencing, the trial court accepted evidence that Wooldridge had twice been convicted for theft of property worth at least $750 but less than $20,000, and that the convictions, dated 1990 and 1992, respectively, came at a time when such an offense was categorized as a third-degree felony. *Id.* at 716. In 1994, the property-theft offenses for which Wooldridge had been convicted were recategorized as less severe offenses that, had they been committed after September 1, 1994, "could not have been used to enhance the punishment for the offense in [the aggravated assault] case." *Id.* Therefore, the trial court determined that the prior convictions could not be used for enhancement

18

purposes and sentenced Wooldridge to seven years' imprisonment, a punishment within the statutory range for a second-degree felony without enhancements. *Id.*

The court of appeals held that the trial court "was mistaken in finding that the prior convictions could not be considered for enhancement purposes," because the convictions were for third-degree felony offenses at the time they were committed. *Id.* at 716-17. But the court of appeals went on to conclude, citing *Harris*, that "without findings of 'true' to the enhancement allegations at the punishment hearing, the trial court's seven-year sentence of appellant was valid and authorized" and that any attempt to resentence Wooldridge as an habitual offender "would be invalid and unconstitutional." *Id.* at 717.

Reversing the judgment of the court of appeals on the double-jeopardy issue, the court of criminal appeals held,

> This case is unlike *Harris* in that the record *does* support the contention that Wooldridge's sentence was statutorily unauthorized at the time it was pronounced. The record does show that the trial court believed that the enhancement allegations were true. Its decision not to assess punishment was based, not on any fact, but on a ruling of law. That ruling, as we have held above, was incorrect.

*Id.* at 718.

It is not clear from either court's opinions in *Wooldridge* how the record "showed" that the trial court "believed" the enhancement allegations to be true, particularly as it made no such finding on the record. Nevertheless, in holding that Wooldridge was required to be sentenced as an habitual offender, the court of criminal appeals found it sufficient that the trial court "believed" the enhancement allegations were true. *Id.* Therefore, the seven-year sentence was "statutorily

19

unauthorized" because it did *not* take into account the prior felony convictions, and the court of criminal appeals determined that Wooldridge's double-jeopardy rights would not be violated by remanding to the trial court for a new sentencing hearing. *Id.* at 718-19.

Criticizing the majority's holding, Justice Meyers argued in his dissent that the court of appeals had properly interpreted *Harris* in order to "correctly determine that without findings of 'true' on the prior convictions, the 7-year sentence was legal" when it was pronounced. *Id.* at 720 (Meyers, J., dissenting). Here, Grant makes a similar argument that his three-year sentence was valid when it was pronounced, since the trial court had not yet entered a finding of true to the enhancement allegation. He alleges that the three-year sentence was pronounced after the trial court heard all of the punishment evidence and "impliedly found the enhancement paragraph not true," and that the later imposition of a higher sentence came as the result of "a full reconsideration of that sentence and the enhancement paragraphs upon the request of the State."

We do not agree that the record supports such a conclusion. In light of *Wooldridge*, we interpret the trial court's statement, "Let me reconsider that, I forgot about the enhancement" and its immediate resentencing to a period within the range for an habitual offender as indications of the court's belief that the enhancement allegation was true. Because of this belief, Grant's initial sentence was not a valid and lawful sentence when it was pronounced. Even though the initial three-year sentence was pronounced prior to the trial court's finding of true to the enhancement allegation, *Wooldridge* dictates that because the record conveys the trial court's belief that the enhancement allegation was true, Grant was required to be sentenced as an habitual offender in accordance with section 12.42(b) of the penal code. *See* Tex. Penal Code Ann. §§ 12.42(b) (West Supp. 2007) ("if it

20

is shown on the trial of a second-degree felony that the defendant has been once before convicted of a felony, on conviction he *shall* be punished for a first-degree felony"); 12.32(a) (West 2004) ("An individual adjudged guilty of a felony of the first degree *shall* be punished by imprisonment . . . for any term of not . . . less than 5 years.") (Emphases added). The fact that the trial court immediately corrected itself during the same proceeding and made the express finding of true to the enhancement allegation on the record further supports our conclusion as to the court's belief in this regard.

While Grant argues that the trial court's initial pronouncement reflects its full consideration of the enhancement evidence and, by extension, its belief to the contrary—that the enhancement allegation was not true—we think the record is clear that the trial court simply made a mistake. Indeed, by admitting that he "forgot about the enhancement" and that he "erred," the judge made explicit his intention to have sentenced Grant as a repeat offender in the first instance. Grant concedes that the trial court would be permitted to make a "correction in sentence to reflect a misstatement," and we conclude that this record presents a case where the judge simply misspoke.[12]

---

[12] Justice Cochran's concurring opinion in *Aguilera* confronts the possibility that judges occasionally make mistakes or misstatements in speaking and notes that various courts have dispensed with the idea "that the *Double Jeopardy Clause* prohibits any correction, alteration, or change once the words pronouncing sentence have fallen from a judge's lips." *See State v. Aguilera*, 165 S.W.3d 695, 701 n.7 (Tex. Crim. App. 2005) (Cochran, J., concurring). Grant, in his brief, cites to a number of these cases involving mistakes made in pronouncing sentence, which could later be corrected without violating double jeopardy. *See Bozza v. United States*, 330 U.S. 160, 166-67 (1947) (trial judge forgot to impose mandatory fine); *Green v. United States*, 363 A.2d 979, 980-81 (D.C. Cir. 1976) (judge misspoke and corrected error before defendant transported to serve sentence); *United States v. DiLorenzo*, 429 F.2d 216, 221 (2d Cir. 1970) (judge inadvertently transposed sentences); *Vincent v. United States*, 337 F.2d 891, 893 (8th Cir. 1964) (first sentence void because exceeded permissible punishment range); *Oxman v. United States*, 148 F.2d 750, 752 (8th Cir. 1945) (judge made mistake and recalled defendant one hour later); *Maher v. State*, 991 P.2d 1248, 1249 (Wyo. 1999) (judge misspoke but clearly intended for sentences to run consecutively, not concurrently). In light of these decisions and their similarity to the case at bar, we are further

By his own admission, the trial judge momentarily "forgot" about the enhancement and, once reminded, he reformed the sentence to fall within the statutorily mandated punishment range for the enhanced offense.[13]

We therefore hold that the trial court did not err in correcting its pronouncement of sentence because doing so did not violate Grant's double-jeopardy right and overrule his second point of error.

## CONCLUSION

Because the trial court did not err in admitting evidence of Grant's previous felony conviction for the purpose of impeaching his testimony or in correcting its sentence to reflect its finding of true to the enhancement allegation, we affirm the judgment of the trial court.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:   February 15, 2008

Publish

_____

convinced that the trial judge's actions in this case were permissible.

[13] As we noted previously, the trial court had plenary power to modify Grant's sentence. Because court was never adjourned prior to the correction being made and Grant was never removed from his place before the bench, the evidence is undisputed that Grant had not yet begun to serve his sentence.