Affirmed and Memorandum Opinion filed October 20,
2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00483-CR

____________

 

DENNIS KEITH HUDSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause No.
1112642

 



 

M E M O R A N D U M  O P I N I O N








A jury found appellant, Dennis Hudson,
guilty of aggravated sexual assault of his step-daughter, L.L., a child, and
assessed punishment at confinement for life.  In three issues, appellant
contends (1) the trial court erred in stating incorrect facts concerning the
law of parole during voir dire, (2) the trial court erred in allowing the State
to impeach a defense witness with a successfully completed probation, and (3)
appellant received ineffective assistance of counsel.  Because all dispositive
issues are settled in law, we issue this memorandum opinion and affirm.  See
Tex. R. App. P. 47.4.

I.  Discussion

In issues one and two, appellant asserts
error based on comments by the trial court and questioning by the State to
which his counsel did not object.  In issue three, he asserts ineffective
assistance of counsel based on counsel=s failure to
object.  The facts of the
underlying offense are not relevant to our disposition of these issues, and we set forth the procedural facts relevant
to the issues below.

A.  Comments during Voir Dire

In issue one, appellant argues the trial
court erred in stating incorrect facts concerning the law of parole.  During
voir dire, the trial court explained the range of punishment available for a
first-degree felony when the person has previously been to prison.  The
relevant exchange took place as follows:

VENIREPERSON:  What=s the difference between 99 years
and life?

THE COURT:  There is no real practical
difference.  It=s for parole.  Life is 30 years day
for day in this type of case, and then you=re eligible for parole for your first time.  It doesn=t mean you are going to make parole,
but after 30 years you are eligible.  The same thing with 99, it=s 30 years.

VENIREPERSON:  The maximum you can actually give
is 30 years?

THE COURT:  No, because if there are B

VENIREPERSON:  He could get out in 30 years?

THE COURT:  He could.

VENIREPERSON:  If you assessed him to life?

THE COURT:  It depends on the parole board.

VENIREPERSON:  If he is sentenced to less than
that, let=s say you sentence 50 years instead
of 99, so is it a third of it so they get out in 17 years?

THE COURT:  A half. It=s a half, up to 30 years.  If he
gets 30 years, he does 15.








VENIREPERSON:  How about even in a heinous crime like this?

. . . .

THE COURT:  Protest to the parole board.  The instruction is
[sic] that I give jurors when they get to punishment is you may consider the
existence of the parole law, but you cannot consider how it applies to this
particular defendant because that decision is up to the Board of Pardons and
Paroles.  And so you can get on the protest list.  I know that I=m on several, and you can protest parole.

VENIREPERSON:  You can give life, but he won=t have to serve more than 30 years?

THE COURT:  Right.

 

To preserve an issue for appeal, a party
must make a timely objection specifically stating the legal basis for that
objection.  See Tex. R. App. P. 33.1(a);
Rhoades v. State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996).  Appellant=s trial counsel
did not object to the trial court=s comments.  Thus,
appellant waived any complaint regarding the trial court=s remarks.  See
Rhoades, 934 S.W.2d at 120.

Appellant contends the trial court=s comments
amounted to a supplemental jury charge and we should therefore review his
unpreserved issue under the egregious-harm standard of Almanza v. State,
686 S.W.2d 157 (Tex. Crim. App. 1984).  In support, he relies on Rogers v. State, 
38 S.W.3d 725 (Tex. App.CTexarkana 2001, pet. ref=d).  During the
punishment phase in Rogers, the trial court did not provide a jury
instruction on the effect of a life sentence on parole eligibility.  38 S.W.3d
at 729; see Tex. Code Crim. Proc. Ann. art. 37.07 ' 4(a) (Vernon
2007).  Then, during deliberations, the trial court failed to provide a full
and complete instruction in response to the jury=s question on the
same matter.  Rogers, 38 S.W.3d at 729.  The appellate court applied the
Almanza standard because substantive responses to jury questions during
deliberations amount to supplemental jury charges.  Id. (citing Daniell
v. State, 848 S.W.2d 145, 147 n.2 (Tex. Crim. App. 1993)).








Unlike Rogers and the cases cited
therein, the trial court=s comments in the present case occurred
during jury deliberations, not voir dire.  Therefore, Almanza does not
require review of the trial court=s comments during
voir dire, absent an objection.  See Rhoades, 934 S.W.2d at 119B20, 121 (applying Almanza
when addressing the jury charge, but not when addressing the trial court=s comments during
voir dire).

For the preceding reasons, we overrule
appellant=s first issue. 

B.  Impeachment Evidence

In issue two, appellant argues the trial
court erred during the guilt/innocence phase by allowing the State to impeach a
defense witness, L.L.=s mother, with a successfully completed
probation.  See Tex. R. Evid. 609(c)(2) (stating evidence of witness=s conviction not
admissible under rule if witness has successfully completed probation for crime
of conviction and has not been convicted of a subsequent crime classified as
felony or involving more turpitude).  As part of issue two, appellant also
complains about the State=s use of the impeachment evidence in
closing argument.

On direct examination, L.L.=s mother testified
she did not believe her daughter=s allegations. 
She also testified she and appellant took the family to church three days each
week and they Aloved@ it.[1] 
After she and appellant separated, L.L.=s mother Aput food on the
table and pa[id] the rent and [did] everything a parent needs to do to raise a
family.@

Before the State=s
cross-examination of L.L.=s mother, the following exchange took
place at the bench:








[PROSECUTOR]:  The door
has been opened towards the credibility of this witness as far as some
statement that she was a good Christian mother or something to that effect. 
She has been previously on probation seven years for a third-degree felony, but
she did successfully complete it.  However, it has been a false impression in
front of the jury that she=s playing a good Christian mother in his question.

THE COURT:  Straight or
deferred?

[PROSECUTOR]:  It was
straight probation: Welfare fraud.

THE COURT:  Has she
been convicted of anything since?

[PROSECUTOR]:  Not
since then.

DEFENSE:  No.

THE COURT:  Tell me how
that doesn=t apply (indicating).  Gives a
false impression to the jury.

[PROSECUTOR]:  The
particular question about, Was your mom otherwise a good Christian person, may
have been more flattering than that false impression that=s bean [sic] left with the jury.

[DEFENSE COUNSEL]:  It
[sic] up to you, but on redirect I can ask her the rest of her life and how she=s lived it.

THE COURT:  Sure.

[DEFENSE COUNSEL]:  I
mean people make mistakes.  She was on probation.  She successfully completed
it.

THE COURT:  All right. 
That=s fine.  You can do that.  I=ll let him impeach her on it and
you can clear it up.

[DEFENSE COUNSEL]: 
Okay.

On cross-examination, the State elicited
L.L.=s testimony about
being placed on probation, the offense for which she was convicted, and some
specifics of the offense:

Q.  Ms. [L.], back in
1999, you were put on probation for a case right?

A.  Yes, sir.

Q.  That was for a
third-degree felony, welfare fraud, right?

A.  Yes, sir, but they
didn=t name it as welfare fraud.

Q.  Was it illegal
altering of food stamps?

A.  Yes, sir.

Q.  Third-degree
felony. And that was a seven-year probation that you were placed on, right?

A. Yes, sir.








Q.  Those seven years,
you successfully completed that probation, right?

A.  Yes, sir.

Q. That crime, that=s a crime of moral turpitude. 
Would you agree with me?

A. Yes, sir.

Q. A crime of deceit?

A. That would be a
crime of deceit.

 

During closing, the prosecutor then
argued, ASo, Mom comes in
and we learn a couple of things.  One, she=s already been to
the pen for a third-degree felony.  There=s her
truthfulness.  There=s her credibility.@

Appellant, however, did not object to the
impeachment testimony or the argument of which he complains on appeal.  He has
therefore not preserved these complaints for review.  See Tex. R. App.
P. 33.1(a); Ochoa v. State,
481 S.W.2d 847, 849 (Tex. Crim. App. 1972).  Accordingly, we overrule appellant=s second issue.

C.  Ineffective Assistance of Counsel

In issue three, appellant argues he was
denied his Sixth Amendment right to effective assistance of counsel.  Appellant=s complaints fall
into two broad categories: the first based on counsel=s lack of
objection to the trial court=s comments during voir dire; and the
second based on counsel=s lack of objection to the State=s impeachment of
L.L.=s mother.

Legal standards.  To prevail on an
ineffective assistance of counsel claim, an appellant must prove (1) trial
counsel=s representation
fell below the objective standard of reasonableness, and (2) there is a
reasonable probability that, but for counsel=s deficiency, the
result of the proceeding would have been different.  Thompson v. State,
9 S.W.3d 808, 812 (Tex. Crim. App. 1999); see Strickland v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).








A court need not address both components
of the inquiry if a defendant makes an insufficient showing on one.  Strickland,
466 U.S. at 697, 104 S. Ct. at 2069.  AFailure to make
the required showing of . . . deficient performance . . . defeats the
ineffectiveness claim.@  Id. at 700, 104 S. Ct. at 2071.

In considering the first prong of the Strickland
test, we indulge a strong presumption that counsel=s actions fell
within the wide range of reasonable professional behavior and were motivated by
sound trial strategy.  Id. at 689, 104 S. Ct. at 2065; Jackson v.
State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  To defeat the
presumption of reasonable professional assistance, any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness.  Thompson, 9 S.W.3d at 814
(quoting McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.
1986)).  In most cases, direct appeal is an inadequate vehicle for raising such
a claim because the record is generally undeveloped and cannot adequately
reflect the motives behind trial counsel=s actions.  Rylander
v. State, 101 S.W.3d 107, 110B11 (Tex. Crim.
App. 2003); Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App.
1998).   Trial counsel may have had a specific strategy for his conduct, and a
reviewing court may not speculate on trial counsel=s motives in the
face of a silent record.  Thompson, 9 S.W.3d at 814.  On a silent
record, this court can conclude counsel=s performance was
deficient only if the challenged conduct was Aso outrageous that
no competent attorney would have engaged in it.@ Goodspeed v.
State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

No objection to
the trial court=s comments during
voir dire.  Appellant first complains about counsel=s failure to
object to the trial court=s comments during voir dire about the
difference between a life sentence and a ninety-nine year sentence and the
potential effect of parole on the sentence actually served.  Texas Code of
Criminal Procedure article 37.07, section 4(a) provides that, in the penalty
phase following a conviction for aggravated sexual assault, the trial court
shall instruct the jury:








AUnder the law applicable in this
case, the defendant, if sentenced to a term of imprisonment, may earn time off
the period of incarceration imposed through the award of good conduct time. 
Prison authorities may award good conduct time to a prisoner who exhibits good
behavior, diligence in carrying out prison work assignments, and attempts at
rehabilitation.  If a prisoner engages in misconduct, prison authorities may
also take away all or part of any good conduct time earned by the prisoner.

AIt is also possible that the length
of time for which the defendant will be imprisoned might be reduced by the
award of parole.

AUnder the law applicable in this
case, if the defendant is sentenced to a term of imprisonment, he will not
become eligible for parole until the actual time served equals one‑half
of the sentence imposed or 30 years, whichever is less, without consideration
of any good conduct time he may earn.  If the defendant is sentenced to a term
of less than four years, he must serve at least two years before he is eligible
for parole.  Eligibility for parole does not guarantee that parole will be
granted.

AIt cannot accurately be predicted
how the parole law and good conduct time might be applied to this defendant if
he is sentenced to a term of imprisonment, because the application of these
laws will depend on decisions made by prison and parole authorities.

AYou may consider the existence of
the parole law and good conduct time.  However, you are not to consider the
extent to which good conduct time may be awarded to or forfeited by this particular
defendant.  You are not to consider the manner in which the parole law may be
applied to this particular defendant.@

 

Tex. Code Crim. Proc. Ann. art. 37.07 ' 4(a) (Vernon 2007). 
The court in the present case so instructed the jury during the penalty phase.

The trial court=s comments during
voir dire, set forth in Part I.A., above, substantially tracked article 37.07,
section 4(a).  Therefore, the trial court would have correctly overruled any
objection, and we cannot declare appellant=s trial counsel
deficient for not objecting.  See Thacker v. State, 999 S.W.2d 56, 67
(Tex. App.CHouston [14th Dist.] 1999, pet. ref=d) (ATrial counsel is
not ineffective for failure to make meritless objections.@).








No objection to
the State=s elicitation of
testimony regarding a witness=s probation,
expansion of the testimony, and reference to it during closing argument.  Appellant next
complains of counsel=s failure to object to the State=s (1) questioning
L.L. about an offense for which she had successfully completed probation, (2)
eliciting L.L.=s testimony the offense was one of moral turpitude and
deceit, and (3) referring to the offense in closing argument.

Even if we assume appellant=s counsel might
have successfully objected under Texas Rule of Evidence 609(c), we do not have
a record of counsel=s reasons for not having done so.[2] 
Neither is the challenged conduct of such a nature that we can conclude Ano competent
attorney would have engaged in it.@ Goodspeed,
187 S.W.3d at 392.[3]








The focus at the bench conference was
whether the door had been opened to the impeachment testimony, and the trial
court appears to have been inclined to admit it.  Defense counsel argued that,
if the prosecutor elicited the testimony, the defense could ask W.L. Aabout the rest of
her life and how she=s lived it,@ and the court
agreed the defense could Aclear it up.@  Given the manner
in which the testimony evolved, counsel may have decided not to emphasize it by
objecting before the jury, revisiting the matter on redirect, or objecting to
the prosecutor=s brief comment in closing argument.

Again, we are faced with an appellate
record bereft of any explanation for counsel=s decision not to
object, or failure to object.  Thompson, 9 S.W.3d at 813, 814.  Because
of the lack of evidence in the record reflecting trial counsel=s reasons for not
objecting, we may not conclude that his performance was deficient.  Toney v.
State, 3 S.W.3d 199, 210 (Tex. App.CHouston [14th]
1999, pet. ref=d); see Freeman v. State, 125 S.W.3d 505, 506B07 (Tex. Crim.
App. 2003).

II. Conclusion

Having
overruled appellant=s three issues, we affirm the judgment of
the trial court.

 

 

 

 

/s/      Charles
Seymore

Justice

 

 

Panel consists of Justices Seymore, Brown, and Sullivan.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  L.L. was staying with her grandmother and attended
church only on Sundays, when her grandmother allowed her to be at appellant=s house.





[2]  Rule 609(c)(2) provides that evidence is not
admissible under the rule Aif . . .
probation has been satisfactorily completed for the crime for which the person
was convicted, and that person has not been convicted of a subsequent crime
which was classified as a felony or involved moral turpitude, regardless of
punishment . . . .@  Tex. R. Evid.
609(c)(2).  We do not address whether appellant=s questioning may have opened the door to this
testimony.  Cf.  Grant v. State, 247 S.W.3d 360, 366B67 (Tex. App.CAustin
2008, pet. ref=d) (stating, regarding subsection (b) prohibition on
admission of prior convictions more than ten years old:  AWhere the witness creates a false impression of law‑abiding
behavior, he >opens the door= on
his otherwise irrelevant past criminal history and opposing counsel may expose
the falsehood.@).





[3] The challenged conduct in this case does not reach
the level which courts have concluded constitutes deficient representation
absent a record reflecting counsel=s
reasons for his action or inaction.  See, e.g., Andrews v.
State, 159 S.W.3d 98, 100 (Tex. Crim. App. 2005) (considering counsel=s failure to object to prosecutor=s misstatement of law that defendant=s sentences could not be stacked even though counsel
knew prosecutor had filed a motion to cumulate sentences); Storr v. State,
126 S.W.3d 647, 652B53 (Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d) (concluding
case was Arare instance when there is no trial strategy that can
explain the failure of appellant=s
trial counsel to request a safe release instruction@ in punishment phase of kidnapping  trial when
evidence conclusively established defendant voluntarily released victim in safe
place); Stone v. State, 17 S.W.3d 348, 352 (Tex. App.CCorpus Christi 2000, pet. ref=d) (considering defense counsel=s conduct of eliciting damaging inadmissible evidenceCthat defendant had been convicted of murder and
released ten years earlierCwhen court had
already indicated it would exclude the evidence).