Opinion issued August 7, 2014



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00301-CR

————————————

**CHARLES JACQUARD TURNER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1306666**

# O P I N I O N

A jury convicted appellant, Charles Jacquard Turner, of the first-degree

felony offense of aggravated robbery and assessed punishment at sixty-five years'

confinement.[1]  In his sole issue, appellant contends that the trial court abused its discretion in limiting appellant's cross-examination of a State witness because the State's questioning opened the door to admission of the witness's complete criminal history.

We affirm.

## Background

Celia Ochoa was at her apartment in South Houston during the late morning hours of May 16, 2011, when she heard someone kicking her front door. Frightened, she called her daughter-in-law, Marelyn, who lived in the apartment above her.  Marelyn opened her window and asked the man why he was kicking Celia's door.  The man replied, "My bad, I'm in the wrong apartment," and he then left the area on a bicycle.  Celia could not see the man's face, but she did see the man ride away from her apartment on a bicycle.  A couple of weeks later, Marelyn identified appellant in a photo-array as the man with whom she had spoken.

Maria Garza lived on Iowa Street in South Houston.  Around 11:00 a.m. on May 16, 2011, a man knocked very hard on Garza's front door.  Garza did not answer the door, but she did see a man leave her house on a bicycle.  Garza later identified appellant in a photo-array as the man who had knocked on her front door.

---

[1]  *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011).

2

Around 11:45 a.m., Barbara Mixon returned to her house on Iowa Street and discovered a bicycle blocking her driveway. When she saw the bicycle, she assumed that one of the neighborhood children had placed it there before going to play in the Mixons' pool, but when Barbara checked her backyard, no children were by the pool. Barbara went inside her house and found her husband, Thomas Mixon, the complainant, lying severely injured on the floor. Numerous items had been stolen from the Mixons' house, including jewelry, part of Thomas's coin collection, papers, tools, firearms, and Thomas's truck, which Barbara described as a white Chevrolet with Korean War-related stickers on it. Thomas, who was seventy-nine at the time of the incident, stayed in the hospital for ten days as a result of his injuries.

The State announced its intention to call Raymond Cavitt, a "confidential informant" in the case who encountered appellant after the incident at the Mixons' house and subsequently contacted the police with information about the robbery. After giving information to the police but before appellant's trial, Cavitt had been arrested on an unrelated charge, and he testified at appellant's trial in his Harris County Jail clothes. The trial court held a hearing outside the presence of the jury to determine the admissibility of Cavitt's prior criminal history. The State informed the trial court that Cavitt had five prior convictions: a 2007 conviction for forgery, a 2007 conviction for theft, a 1989 conviction for sexual assault, a

federal weapons conviction from the early 1980s, and a 1976 conviction for robbery. The parties agreed, and the trial court ruled, that only the two 2007 convictions and the 1989 conviction could be used to impeach Cavitt. Defense counsel explicitly stated, "Judge, you've given me three and I can go along with the Court's ruling." The trial court informed Cavitt that he would only be asked about his three most recent convictions.

During direct-examination, Cavitt acknowledged that he currently resided in the Harris County Jail, and he had the following exchange with the State:

| [The State]: | Now, in addition to your current predicament, you've been in trouble with the law before; is that right? |
|---|---|
| [Cavitt]: | Yes, ma'am. |
| [The State]: | Back in 2007, you were convicted of forgery? |
| [Cavitt]: | Yes, ma'am. |
| [The State]: | In 2007, you were also convicted of theft? |
| [Cavitt]: | Yes, ma'am. |
| [The State]: | And [then] in 1989, you were convicted of sexual assault? |
| [Cavitt]: | Yes, ma'am. |

The State then resumed asking Cavitt about his encounter with appellant.

Before cross-examining Cavitt, defense counsel requested another hearing outside the presence of the jury. Defense counsel stated:

My hearing was [the prosecutor] asked Mr. Cavitt at the beginning, you've been in trouble with the law before; haven't you, Mr. Cavitt?

4

> And then she named three occasions. The Defense claims that that opens up the door to the other occasions when he's been in trouble with the law before, didn't limit it to convictions. . . . It leaves a false impression with the jury. We should be able to bring out those other occasions he's been in trouble with the law.

The trial court agreed with the State's argument in response that the questions had not opened the door to the remainder of Cavitt's criminal history and stated, "I'm not allowing you to go further than the three we already discussed." Defense counsel put on a bill of exceptions, in which Cavitt testified that he also had a federal weapons conviction, a 1976 robbery conviction, a second forgery conviction around 1990, and an unlawful carrying of a weapon charge.

Cavitt testified that appellant was an acquaintance of Cavitt's home health care provider. On the afternoon of May 16, 2011, Cavitt was standing outside his provider's house when appellant drove up in a white truck that Cavitt knew did not belong to appellant. Appellant jumped out of the truck, which he left in the middle of the street, yelling that he could barely see because someone had sprayed his face with something and had beaten him up. After Cavitt helped appellant wash his face, Cavitt parked the truck by his provider's house. When he moved the truck, Cavitt noticed tools, paperwork, jewelry, old coins, and firearms in the truck.

At his provider's request, Cavitt moved the truck a second time to a nearby parking lot. Cavitt later found out that the truck had been involved in a robbery, and he contacted the police because his fingerprints were in the truck. Cavitt

5

offered the police information regarding who owned the truck, and he assisted in recovering some of the Mixons' property. Cavitt overheard appellant telling a friend that he had beaten up an old man.

The Harris County Institute of Forensic Sciences tested several items related to this case for DNA samples, including the bicycle found in the Mixons' driveway, a metal box taken from the Mixons' house, a piece of a rifle found in Thomas Mixon's truck, and appellant's tennis shoes. Diana Wolfshohl, the analyst who performed the DNA tests, determined that appellant was a "major contributor" of the DNA recovered from the right handle of the bicycle and that he could not be excluded as a source of the DNA found on the left handle. Appellant also could not be excluded as a source of DNA found on the metal box, on the front door of the Mixons' residence, and on the piece of a rifle found in Mixon's truck. Wolfshohl also tested a "red brown stain" on appellant's tennis shoes, and the tests revealed that Mixon was a "major contributor" of DNA found on the shoes.

The jury ultimately found appellant guilty of aggravated robbery and assessed punishment at sixty-five years' confinement. This appeal followed.

**Admission of Witness's Complete Criminal History**

In his sole issue, appellant contends that the trial court erroneously limited his cross examination of Cavitt and erroneously excluded evidence of Cavitt's

6

complete criminal history because the State opened the door to admission of this evidence.

We review the trial court's ruling on the exclusion of evidence for an abuse of discretion. *See Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). We will uphold the trial court's evidentiary ruling as long as it falls within the zone of reasonable disagreement and is correct under any theory of law applicable to the case. *See id.*

Generally, when attacking the credibility of a witness, the trial court may admit evidence of prior criminal convictions only if the crime was a felony or involved moral turpitude and the court determines that the probative value of the conviction outweighs its prejudicial effect. *See* TEX. R. EVID. 609(a); *Delk v. State*, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993). Rule 609 further provides that evidence of a prior conviction is generally not admissible if more than ten years have elapsed since the date of conviction or release from confinement, unless the court determines that the probative value substantially outweighs the prejudicial effect. TEX. R. EVID. 609(b). An exception to Rule 609 applies when the witness "makes statements concerning his past conduct that suggest he has never been arrested, charged, or convicted of any offense." *Delk*, 855 S.W.2d at 704; *see also Winegarner*, 235 S.W.3d at 790 (stating that exception also applies when witness creates false impression regarding "the extent of his prior troubles with the law").

If the witness creates a false impression of law-abiding behavior, he "opens the door" on his "otherwise irrelevant past criminal history and opposing counsel may expose the falsehood." *Delk*, 855 S.W.2d at 704; *see also Hernandez v. State*, 351 S.W.3d 156, 160 (Tex. App.—Texarkana 2011, pet. ref'd) ("In order for [the false impression] exception to apply, however, the defense must unambiguously create a false impression of law-abiding behavior, thereby permitting introduction of evidence of past criminal history.").

In analyzing the applicability of this exception, we consider the witness's statement in relation to the question asked, examine how broadly the question could be interpreted, and analyze the relationship between the question asked and the major substantive issues in the trial. *Grant v. State*, 247 S.W.3d 360, 368 (Tex. App.—Austin 2008, pet. ref'd); *Paita v. State*, 125 S.W.3d 708, 712 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (noting that courts also consider whether the witness's answer was responsive to the question asked). If a witness voluntarily or nonresponsively testifies concerning extraneous matters, the opposing side may correct a false impression presented by the answer. *Paita*, 125 S.W.3d at 712 (citing *Roberts v. State*, 29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd)). The scope of the impeachment must not exceed the issue that the witness opened. *Id.* at 713 (citing *Hammett v. State*, 713 S.W.2d 102, 105–07 (Tex. Crim. App. 1986)).

Here, before Cavitt testified, the trial court held a hearing outside the presence of the jury to discuss Cavitt's prior convictions. The State informed the trial court that, in addition to a pending unrelated charge, Cavitt had five prior convictions: a 2007 forgery conviction, a 2007 theft conviction, a 1989 sexual assault conviction, a federal weapons conviction from the 1980s, and a 1976 robbery conviction. The trial court, the State, and defense counsel all agreed that the only convictions admissible for impeachment were the 2007 forgery conviction, the 2007 theft conviction, and the 1989 sexual assault conviction. When discussing the two earliest convictions, defense counsel stated, "Judge, you've given me three and I can go along with the Court's ruling." The trial court then informed Cavitt that he would only be asked about the two 2007 convictions and the 1989 conviction.

Cavitt testified in his jail clothes. The State acknowledged that fact in its questioning but did not ask what he was charged with or any details about that case. The State and Cavitt had the following exchange during direct examination:

| [The State]: | Now, in addition to your current predicament, you've been in trouble with the law before; is that right? |
| [Cavitt]: | Yes, ma'am. |
| [The State]: | Back in 2007, you were convicted of forgery? |
| [Cavitt]: | Yes, ma'am. |
| [The State]: | In 2007, you were also convicted of theft? |

| [Cavitt]: | Yes, ma'am. |
| [The State]: | And [then] in 1989, you were convicted of sexual assault? |
| [Cavitt]: | Yes, ma'am. |

Cavitt answered all of the State's questions on this issue truthfully and responsively. The State then resumed asking Cavitt about his encounter with appellant after the robbery occurred.

Before beginning cross-examination of Cavitt, outside the presence of the jury, defense counsel stated the following:

> My hearing was [the State] asked Mr. Cavitt at the beginning, you've been in trouble with the law before; haven't you, Mr. Cavitt? And then she named three occasions. The Defense claims that that opens up the door to the other occasions when he's been in trouble with the law before, didn't limit it to convictions. . . . It leaves a false impression with the jury. We should be able to bring out those other occasions he's been in trouble with the law.

The trial court agreed with the State that the State's question did not open the door. The trial court stated, "I'm not allowing you to go further than the three we already discussed." The trial court overruled defense counsel's objection, and defense counsel perfected a bill of exception concerning the remainder of Cavitt's criminal history.

Appellant cites *Ex parte Carter* and *Reese v. State* as support for his argument that the State opened the door to Cavitt's complete criminal history by

asking, "[Y]ou've been in trouble with the law before; is that right?"[2]  However, unlike those cases, here the parties and the trial court explicitly agreed prior to examination of Cavitt that the State would ask Cavitt about only three of his prior convictions and that his earliest convictions were inadmissible.  *See Ex parte Carter*, 621 S.W.2d 786, 788 (Tex. Crim. App. 1981) (allowing impeachment of defendant with entire criminal history of thirteen arrests that had not resulted in convictions after defendant admitted he had previously been in trouble, but, after counsel urged him to "get specific," defendant admitted only to two prior convictions and two prior extraneous offenses); *Reese v. State*, 531 S.W.2d 638, 641 (Tex. Crim. App. 1976) (allowing impeachment with additional offense for unauthorized use of automobile when in response to question about "what kind of trouble" defendant had with law, defendant admitted only one car-theft conviction).  Defense counsel affirmatively stated on the record that limiting impeachment of Cavitt to his three most recent convictions was acceptable.  The State abided by this agreement and prefaced its questioning of Cavitt on this issue by stating, "[Y]ou've been in trouble with the law before; is that right?"  Cavitt answered this question truthfully.  The State then asked Cavitt about his two 2007

---

[2]    Appellant also cites the Court of Criminal Appeals' unpublished opinion in *Bess v. State*, No. AP-76377, 2013 WL 827479 (Tex. Crim. App. Mar. 6, 2013) (mem. op., not designated for publication), as support for this argument.  As the State notes, *Bess* is an unpublished case that has no precedential value and "must not be cited as authority by counsel or by a court."  *See* TEX. R. APP. P. 77.3.

11

convictions and his 1989 conviction, and Cavitt testified, correctly and truthfully, that he had those prior convictions.

Cavitt thus responded truthfully and responsively, and in accordance with the parties' prior agreement, to all of the State's questioning regarding his prior criminal history. *See Grant*, 247 S.W.3d at 368 (stating that courts consider witness's statement in relation to question asked); *Paita*, 125 S.W.3d at 712 (stating that courts consider whether witness's answer was responsive to question asked). This was not an instance of the State's asking an open-ended question about Cavitt's criminal history and Cavitt's testifying selectively about some previous convictions and omitting others. *Cf. Ex parte Carter*, 621 S.W.2d at 788; *Reese*, 531 S.W.2d at 641. Instead, Cavitt followed the trial court's explicit instructions, given to him at a hearing outside the presence of the jury, to answer questions only about the three specified prior convictions.

We conclude that the trial court reasonably could have concluded that, in following the instructions given to it by the court, the State did not open the door to allowing defense counsel to inquire about the remainder of Cavitt's criminal history. We hold that the trial court did not abuse its discretion in prohibiting defense counsel from asking Cavitt about his earlier convictions.

We overrule appellant's sole issue.

**Conclusion**

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish.  TEX. R. APP. P. 47.2(b).